**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEITH M. CULLER,** | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:09-0305 |
| v. | : | |
| | : | (MANNION, M.J.) |
| **ERIC K. SHINSEKI, Secretary of the United States Veterans Affairs,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |

**MEMORANDUM AND ORDER**[1]

Pending before the court is the defendant's motion for summary judgment. (Doc. No. 44). Based upon the court's review of the motion and related materials, the motion will be granted.

**I.    PROCEDURAL HISTORY**

By way of relevant procedural background, on February 17, 2009, the plaintiff filed the instant action, (Doc. No. 1), which he later amended on April 5, 2009, to include claims of age discrimination and retaliation (Count I), First Amendment violations (Count II), and a hostile work environment (Count III), in relation to his employment as an Orthotist at the Wilkes-Barre, Pennsylvania, Veterans Affairs, ("VA"), Medical Center, (Doc. No. 3).

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

On July 30, 2009, the defendant filed an answer to the plaintiff's amended complaint. (Doc. No. 6).

On November 16, 2009, the parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. §636(c). (Doc. No. 11, Doc. No. 12).

On February 26, 2010, the defendant filed a partial motion for judgment on the pleadings which proceeded unopposed by the plaintiff. (Doc. No. 24). As a result of the court's ruling on the defendant's motion, only the following age and retaliation claims contained in Count I of the amended complaint remain:

- Whether the plaintiff was discriminated against on the bases of age and reprisal for prior EEO activity with regard to training when, on-going from an unspecified date in the winter of 2005 until February 2, 2006, he was denied "certification assistance." (Second EEO Complaint)[2].

- Whether the plaintiff was discriminated against on the bases of age and reprisal for prior EEO activity with regard to leave administration when, on November 17, 2005, his request to take leave on November 25, 2005, was denied, and on December 9, 2005, his request for eight hours of annual leave for December 16, 2005, was denied. (Second EEO Complaint).

- Whether the plaintiff was discriminated against on the basis of age and reprisal for prior EEO activities with regard to leave administration when, on or around January 22, 2006, his supervisor refused to pay him overtime for requested support to "catch up" on his workload. (Second EEO Complaint).

---

[2]The plaintiff filed a total of four EEO complaints while at the Wilkes-Barre VA Medical Center.

2

- ▸ Whether the plaintiff was discriminated against on the basis of age and reprisal for prior EEO activity with regard to a position description when, on March 14, 2006, his supervisor attempted to re-describe his position description. (Second EEO Complaint).

- ▸ Whether the plaintiff was discriminated against on the basis of reprisal for prior EEO activity with regard to training when, on March 7, 2007, the decision to send him to the National Training of VA Prosthetics/Orthotists Conference from March 19-24, 2007, was rescinded. (Third EEO Complaint).

- ▸ Whether on the basis of reprisal, the plaintiff was treated in a disparate manner related to a term or condition of employment when, on an unspecified date in 2008 described as "not even a month ago," the plaintiff learned that his former supervisor made comments indicating that an Office of the Inspector General Investigation was his fault. (Fourth EEO Complaint).

(Doc. No. 30).

On June 10, 2011, the defendant filed the instant motion for summary judgment, (Doc. No. 44), along with a statement of material facts, (Doc. No. 45). A brief in support of the motion was filed on June 24, 2011. (Doc. No. 46). An initial motion for an extension of time to file a brief in opposition to the defendant's motion was granted to the plaintiff. (Doc. No. 49). However, a second request for an extension of time pending a decision by the court on the plaintiff's previously filed motion for sanctions was denied, as filed, with the court granting the plaintiff an additional brief period of time to respond to the defendant's motion. (Doc. No. 53). The plaintiff filed a brief in opposition to the defendant's motion on August 3, 2011. (Doc. No. 59). The defendant

filed a reply brief on August 10, 2011. (Doc. No. 62).

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

4

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

**III.    DISCUSSION**

In support of his motion for summary judgment, the defendant has presented a statement of facts, the following of which are not in material dispute[3].

The plaintiff was born in November 1954. He is presently a GS-11

---

[3]For purposes of the instant memorandum, record citations are provided only for those facts which have been denied by the plaintiff, but are found to be supported by the record.

Orthotist at the Baltimore, Maryland, VA Medical Center[4]. (Doc. No. 45, R. 43, pp. 8, 14). The plaintiff became certified by the American Board Certification, ("ABC") in approximately May of 2005, and by the Board for Orthotist and/or Prosthetist Certifications, ("BOC"), approximately six months later. The plaintiff went to the Maryland VA facility starting April 2, 2007, having previously been an Orthotist at the Wilkes-Barre VA Medical Center since 1998.

The National Register is a registry for all the VA laboratories in the country, which identifies which laboratories and which Orthotists are certified. The person in charge of the National Register is John Milani. Mr. Milani requested the plaintiff's ABC and BOC certification numbers on April 6, 2006, after the plaintiff observed that he was not on the National Register. The plaintiff was subsequently listed on the National Register as of July 27, 2006. The plaintiff was also on a list of certified Orthotists issued by the BOC.

Toni Germain-Tudgay is the Chief of the Rehab and Prosthetics Department at the Wilkes-Barre VA Medical Center, and has held that position for the past nine years. She was born in July 1958. Ms. Germain-Tudgay had supervised the plaintiff when he was employed at the Wilkes-Barre VA Medical Center.

---

[4]The defendant's statement indicates that the plaintiff is currently at the Perry Point facility of the Maryland VA. However, the plaintiff's testimony and the record reflects that he is currently at the Baltimore facility.

As reflected in VHA Directive 2004-020, issued on May 17, 2004, the VA evaluated the care and treatment provided to veterans who utilized prosthetics and sensory aid services and required that all VA Prosthetic and Orthotic Laboratories become accredited either through the ABC or BOC. As a result, VA Medical Center Directors were required to assess the accreditation status of those laboratories and, commensurate with their status, to develop a timeline for achieving accreditation.

In accordance with VHA Directive 2004-020, a review was conducted at the Wilkes-Barre VA Medical Center following which it was determined that the Wilkes-Barre VA Medical Center's Orthotic/Prosthetics Laboratory would be closed. As a result, there was no need for the laboratory to become certified or accredited through the ABC or BOC, nor was the plaintiff required to be certified in order to retain his job at the VA Medical Center[5]. Despite this,

---

[5]The plaintiff denies this statement arguing that VHA Directive 2004-020 mandated **each orthotist** to be certified. (Emphasis added). However, upon review, the Directive provides, in relevant part, that:

> c. This national Prosthetic Clinical Management (PCM) workgroup, referred to as the Prosthetic and Orthotic Laboratories and Artificial Limb PCM, reviewed the report and recommended that VA Prosthetic and Orthotic Laboratories achieve industry accreditation through the American Board for Certification (ABC) or through the Board for Orthotist and/or Prosthetist Certification (BOC). This accreditation mandates that each facility have, among its staff, at least one prosthetist and/or orthotist certified by either ABC or BOC.
>
> (continued...)

the plaintiff retained the right to become certified through the ABC or BOC, if he desired to do so. In fact, as discussed above, the plaintiff received certificates in 2005 from both the ABC and BOC to establish that he did become certified.

Ms. Germain-Tudgay has indicated that she is not aware of any VA policy or directive requiring her to assist a VA orthotist who has become certified to be placed on the National Register of certified Orthotists[6]. Ms.

---

[5](...continued)

3. POLICY: It is VHA policy that quality patient care will be provided by furnishing properly prescribed prosthetic and orthotic appliances to all eligible veterans in the most economical and timely manner within the legal limitations of VA. NOTE: ABC or BOC accreditation is now required.

(Doc. No. 45, R. 69).

Thus, it is clear that the Directive does not require that each orthotist be certified, but only that each Prosthetic or Orthotic Laboratory be certified, which would require the laboratory to have at least one certified prosthetist and/or orthotist.

Moreover, the plaintiff admits that it was decided, upon review, that the Wilkes-Barre VAMC's Orthotic/Prosthetics Laboratory would be closed, which would thereby exempt the Wilkes-Barre VA Medical Center from the requirements of the Directive.

Further, although the plaintiff indicates that, if he did not get certified, his title would be changed to "Health Technician" and he could have been downgraded as a result, there is no indication from the record that the plaintiff would lose his job for lack of certification.

[6]The plaintiff denies this statement citing to the language of Directive
(continued...)

Germain-Tudgay is aware that the plaintiff has claimed that she denied him "certification assistance" from the winter of 2005 through mid-2006 or thereabouts.

According to the plaintiff, Ms. Germain-Tudgay asked him his age in 2002 or 2003 or so one day when they drove to the Allentown Clinic. When asked why he believed Ms. Germain-Tudgay had a motive to discriminate against him due to his age, the plaintiff stated "that was one of them," (i.e., she had asked him his age when they drove to the Allentown Clinic), and then stated the following:

> You know, I believe it could have been gender, also. You know, I just know that once she found out, you know, that's when the things she started – the negative actions against me started. She might have, you know – it started almost immediately from the time she was my supervisor. And, you know, like I say, the age is part of it. It could be gender, it could be, you know, any number of reasons. I can't really truly state what was in her mind and why she decided to take all these negative actions against me, you know.

The plaintiff has claimed that Ms. Germain-Tudgay denied him eight hours of annual leave on November 17, 2005 (which was requested for

---

[6](...continued)
2004-02 which mandated that, in order for Prosthetic or Orthotic Laboratories to be accredited, they must have at least one certified prosthetist and/or orthotist. However, as discussed above, because the Wilkes-Barre VA Medical Center decided to close its Prosthetic and Orthotic Laboratory they were exempt from the provisions of the Directive. The plaintiff has referenced no other policy which would have required Ms. Germain-Tudgay to assist him with being placed on the National Registry once he was certified.

November 25, 2005), and eight hours of annual leave on December 9, 2005 (which was sought for December 16, 2005). The Wilkes-Barre VA Medical Center has a leave policy, Policy No. 05-05-425, dated January 15, 2005, captioned "Absence and Leave," which the plaintiff believed was the policy to be followed when seeking leave. In spite of this inclusion in the plaintiff's brief, the defendant's *undisputed* statement of facts indicates otherwise. Namely, that Ms. Germain-Tudgay did not deny the plaintiff leave for November 25, 2005, nor December 16, 2005, but rather the leave was approved, although the plaintiff apparently did not take the leave for November 25, 2005.

In January 2006, the plaintiff asked Ms. Germain-Tudgay to approve two hours of overtime for him so that he could catch up with his work following a ten-day suspension he had served. Ms. Germain-Tudgay denied the overtime but, instead, had his clinic blocked off for two hours so that he would not have to see any patients and he could catch up with his work.

The plaintiff admits that Ms. Germain-Tudgay did not issue a new job description in November 2005. Moreover, he never received a position description in March 2006. On March 14, 2006, Ms. Germain-Tudgay signed a Performance Appraisal Program review of the plaintiff, which he refused to sign.

The plaintiff believes that Ms. Germain-Tudgay made a statement in a staff meeting sometime in 2008 that an Office of Inspector General, ("OIG"), investigation that was occurring was his fault. Ms. Germain-Tudgay never

made such a statement. The plaintiff was not working at the Wilkes-Barre VA Medical Center in 2008 and he did not attend any of Ms. Germain-Tudgay's staff meetings in 2008. The plaintiff based his belief upon what Ms. Germain-Tudgay supposedly said from a conversation he had with Dennis Chabala at a Lowe's store, which statement Mr. Chabala supposedly heard from Beverlee Beckanich. Ms. Beckanich was not aware of Ms. Germain-Tudgay stating that the plaintiff had been responsible for the OIG investigation.

Based upon the above facts, the defendant is seeking summary judgment on the following claims: (1) the denial of certification assistance; (2) the denial of eight hours annual leave for November 25, 2005, and the denial of eight hours of annual leave for December 16, 2005; (3) the denial of two hours of overtime; (4) the 2005/2006 alleged alteration by Ms. Germain-Tudgay of the plaintiff's position description; and (5) the alleged 2008 statement by Ms. Germain-Tudgay during a staff meeting that the plaintiff was responsible for an OIG investigation[7].

In his response to the defendant's motion, the plaintiff concedes, based

---

[7]As to the plaintiff's claim that he was discriminated against on the basis of reprisal with regard to training when, on March 7, 2007, the decision to send him to training from March 19-24, 2007, was rescinded, the defendant maintains that the VA did not retaliate against the plaintiff in deciding to withdraw its funding of the training since the plaintiff was transferring from the Wilkes-Barre VA Medical Center. The defendant acknowledges, however, that a factual dispute exists. Therefore, the defendant maintains that this claim needs to be resolved by the court in a bench trial.

upon the evidence presented by the defendant, that summary judgment should be entered in the defendant's favor with respect to claims (2) and (5) above. Therefore, the defendant's motion for summary judgment will be granted with respect to these claims.

With respect to the plaintiff's claim that there was an alleged attempt on March 14, 2006, to re-describe his position description, as pointed out by the defendant, although this claim was originally allowed to proceed by the court in its September 30, 2010, memorandum and order, this issue is not presently properly before the court. Although the claim was raised by the plaintiff in his second EEO complaint, this is not the same claim raised by the plaintiff in his amended complaint. The plaintiff alleged in his amended complaint that there was an attempt to amend his position description on three occasions between February to November 2005, he did not raise any such claim regarding an attempt to change his position description on March 14, 2006. The plaintiff does not dispute this in his brief opposing the instant motion. Therefore, this is not a claim which is properly before the court.

Moreover, even if the plaintiff had raised this claim in his amended complaint, the plaintiff has conceded in response to the defendant's motion that he never actually received a position description in March 2006, altered or otherwise. There is no indication, therefore, that the plaintiff suffered any adverse action. Furthermore, in ruling on the defendant's motion for partial judgment on the pleadings, the court found that the plaintiff's similar claim

challenging an attempted change of his position description between February to November 2005 failed to state a claim because the plaintiff failed to establish how he was aggrieved by any such action or that any such action had adversely affected his "compensation, terms, conditions, or privileges of employment," as required by 42 U.S.C. §2000e-2(a). The same would hold true for any claim by the plaintiff regarding an attempt to change his job description in March of 2006. In fact, this was the basis of the dismissal of the claim at the EEO level[8]. As such, the defendant's motion for summary judgment will be granted with respect to this claim.

Concerning the remaining two claims which are the subject of the instant motion, the plaintiff's age discrimination claims under the ADEA, as well as his Equal Employment Opportunity ("EEO") retaliation claims, all fall within the framework first set forth in McDonnell Douglas v. Green, 411 U.S.

---

[8]The EEO Officer found, in relevant part, as follows:

> Generally, complainant must raise an employment-related matter that has resulted in some material change in their working conditions. That is, the complainant is required to show some "tangible loss or harm" resulting from personnel or other employment related action. In this case, the complainant has alleged that his supervisor attempted to change his position description; however, he did not provide evidence he suffered a "tangible loss or harm" and such the complainant is not aggrieved, therefore it is my decision to **dismiss** the claim as stated . . . under the authority 1614.107(a)(1), failure to state a claim.

(Doc. No. 24, R. 58).

792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1978). See Lawrence v. Nat'l Westminster Bank N.J., 98 F.3d 61 (3d Cir. 1996).

Pursuant to McDonnell, the plaintiff must first establish a *prima facie* case of discrimination. For a claim of age discrimination, the plaintiff must establish that: (1) he is a member of a protected class; (2) he is qualified for the position held; (3) he suffered an adverse employment action; and (4) the circumstances permit an inference of unlawful discrimination. Lawrence, 98 F.3d at 65. For a claim of illegal retaliation or reprisal, "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Schellenberger v. Summit Bancorp, Inc., 318 F.3d at 183, 187 (3d Cir. 2003) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir.1997)).

If the plaintiff succeeds in establishing a *prima facie* case, the burden under McDonnell shifts to the defendant as the employer to articulate some legitimate, nondiscriminatory or nonretaliatory reason for its action. Lawrence, 98 F.3d at 65. If the defendant meets this burden, the plaintiff must then prove that the defendant's stated reasons are merely pretextual. To do this, the plaintiff must point to either direct or circumstantial evidence from which the factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was

more likely than not a motivating or determinative cause of the employer's action. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994).

In an age discrimination case, the plaintiff must prove that age actually motivated the employer's decision. See Kentucky Retirement Systems v. EEOC, 554 U.S. 135, 142 (2008). Further, in a retaliation case, the plaintiff must prove that his engaging in EEO activity "was a **determinative factor** of the employment decision, meaning that [he would not have been treated differently] but for [his] protected activity." Leboon v. Lancaster Jewish Community Ctr. Ass'n, 503 F.3d 217, 232 n.8 (3d Cir. 2007) (emphasis in original).

In the instant motion for summary judgment, the defendant argues that the plaintiff has failed to establish a *prima facie* case of age discrimination on the remaining claims. Specifically, the defendant argues that the plaintiff has failed to present any evidence that age was a factor in the actions taken on behalf of the defendant or that the plaintiff was treated differently than any similarly situated younger person in order to establish an age discrimination claim. The defendant further references the plaintiff's deposition, in which he testified that he "really didn't know" why Ms. Germain-Tudgay took adverse actions against him and that it "could have been" his age, gender, or any number of other reasons.

In his response to the defendant's motion for summary judgment, the plaintiff has done nothing to refute the defendant's argument that he has

15

failed to establish a *prima facie* case of age discrimination. In fact, his arguments are, for the most part, focused on his claim of retaliation, as opposed to any claim of age discrimination. Moreover, for each claim, the plaintiff skips past any attempt to establish a *prima facie* case and proceeds directly to arguing why the defendant's proffered reasons for any actions taken are pretextual. As discussed above, under McDonnell, the plaintiff must first establish a *prima facie* case of age discrimination before the burden shifts to the defendant to offer legitimate, non-discriminatory reasons for the actions taken, and then back to the plaintiff to argue pretext. In light of the fact that the plaintiff has failed to produce any evidence which would warrant an inference of unlawful age discrimination, the defendant's motion for summary judgment will be granted on the plaintiff's age discrimination claims.

As to the plaintiff's EEO retaliation claims, the defendant argues that the plaintiff has failed to make out a *prima facie* case of retaliation as to his claim of being denied certification assistance in late 2005/early 2006. Specifically, the defendant argues that the plaintiff has failed to provide evidence that the denial of certification assistance is a materially adverse employment action. Further, the defendant argues that the plaintiff has failed to establish a causal connection between his having filed an EEO claim on September 9, 2004, with the denial of any certification assistance in late 2005 or early 2006.

In his response, the plaintiff argues that the failure to provide him certification assistance was a materially adverse employment action in that,

if he had not become certified while employed, that could have led to a title change to a Health Technician which, in turn, could have led to a downgrade. In considering the plaintiff's argument, the court notes initially that by late 2005/early 2006, when the plaintiff alleges that Ms. Germain-Tudgay denied him certification assistance, the record establishes that the plaintiff had already received certification from both the ABC and BOC. In fact, the record shows that the plaintiff received certification from the ABC in May 2005, and from the BOC approximately six months thereafter. Because the plaintiff was already certified, even if certification was required for his position, which the record indicates that it was not, he would not have been subject to a title change or a downgrade.

Moreover, to the extent that the plaintiff's claim is actually that Ms. Germain-Tudgay retaliated against him by not assisting him in getting on the National Registry[9], there is nothing in the record which indicates that she had any obligation to do so. The plaintiff has presented no policy or directive, or any other evidence for that matter, which would require that Ms. Germain-Tudgay assist him in getting placed on the National Register once he was certified. Furthermore, once the plaintiff realized that he was not on the

---

[9]The plaintiff argues in his opposing brief that "[Ms. Germain-Tudgay's] failure to assist him with Certification, through simple administrative perfunctory task of forwarding his grade and proof of Certification over to Mr. Milani, forms the basis of the retaliation." (Doc. No. 59, p. 11).

National Register, he informed Mr. Milani, who requested his certification numbers on April 6, 2006. By July 27, 2006, the plaintiff was on the National Register.

Based upon the above, the plaintiff has failed to establish his *prima facie* case with respect to his claim of being denied certification assistance in late 2005/early 2006 in that he has failed to establish that he suffered a materially adverse employment action in relation thereto. On this basis, the defendant's motion for summary judgment will be granted[10].

Next, the defendant argues that the plaintiff has failed to meet his *prima facie* burden with respect to his claim that he was denied two hours of overtime to "catch up" on his workload in that he has failed to establish that his EEO activity was the cause of the denial of overtime.

In responding to the defendant's argument, the plaintiff once again skips

---

[10] Because the court finds that the plaintiff failed to establish that he suffered a materially adverse employment action, the defendant's argument regarding the plaintiff's failure to establish causation need not be addressed. However, the court notes that, in his opposing brief, the plaintiff does argue that Ms. Germain-Tudgay has provided conflicting statements about this claim so as to permit an inference of discrimination. Specifically, the plaintiff argues that, although Ms. Germain-Tudgay indicated in her declaration supporting the instant motion that she did not know what the plaintiff meant by "certification assistance," in her testimony during the EEO hearing, she indicated that she was "aware" of the plaintiff's accusation regarding denial of certification assistance. As argued by the defendant, there is certainly a difference between being aware of a claim and actually knowing what the claim is referring to.

the *prima facie* analysis and proceeds directly to the pretext analysis by raising challenges to the reasons provided by Ms. Germain-Tudgay for denying the two hours of overtime. In doing so, he has failed to set forth any evidence to meet his *prima facie* burden of establishing that his engaging in EEO activity was a "determinative factor" in Ms. Germain-Tudgay's decision to deny him the overtime or, in other words, that he would not have been denied overtime had he not engaged in EEO activity. As such, the plaintiff has not met his *prima facie* burden, and the defendant's motion for summary judgment will be granted with respect to this claim as well.

Finally, as noted above, the defendant is not seeking summary judgment with respect to the plaintiff's claim that he was discriminated against on the basis of reprisal with regard to training when, on March 7, 2007, the decision to send him to training from March 19-24, 2007, was rescinded. That issue will, therefore, be decided after a bench trial on the matter.

**IV. CONCLUSION**

On the basis of the foregoing, **IT IS HEREBY ORDERED THAT:**

**(1)**  the defendant's motion for summary judgment, **(Doc. No. 44)**, is **GRANTED**; and

**(2)**	the instant action is set for trial, as previously scheduled, on **Monday, August 29, 2011**, on the remaining claim of whether the VA retaliated against the plaintiff in deciding to withdraw its funding of the plaintiff's training.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** August 11, 2011
O:\shared\MEMORANDA\2009 MEMORANDA\09-0305-03.wpd