IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH M. CULLER, | : | |
|     Plaintiff | : | |
| | : | No. 3:09-CV-0305 |
| v. | : | |
| | : | (Magistrate Judge Mannion) |
| ERIC K. SHINSEKI, Secretary of the | : | |
| United States Veterans Affairs, | : | |
|     Defendant | : | Electronically Filed |

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION
FOR SANCTIONS RE THE PRESERVATION AND PRODUCTION OF ESI**

Presently before the Court is Culler's motion for sanctions for the VA allegedly failing to preserve electronically stored information (ESI) and providing such information in discovery. See Docs. 50, 54, 54-1. The VA opposes this motion and submits the following points.

1.  Applicable Law

Culler seeks the sanction of having the Court enter judgment in his favor as to the alleged failure of the VA to preserve and produce ESI but fails to address the law governing the imposition of sanctions for the alleged failure to preserve evidence, *i.e,* the spoliation of evidence. Therefore, the VA notes the case law governing this Court's consideration of plaintiff's motion.

Spoliation of evidence refers to a party's destruction of evidence that is relevant to the issue being litigated. See Schmid v. Milwaukee Electric Tool Corp., 13 F.3d 76, 78 (3rd Cir. 1994). If a party destroys such evidence, a court has the authority to sanction that party. Id.; West v. Goodyear Tire & Rubber Co., 167 F.3d

776, 779 (2nd Cir. 1999). Such sanctions range from the jury being advised of the destruction of relevant evidence and the impact it had on the other party's case; precluding testimony of a particular witness; giving a spoliation instruction which authorizes the jury to infer that the evidence would have been unfavorable to the person responsible for the evidence's instruction; and entering judgment against the party responsible for the evidence's destruction. Schmid, 13 F.3d at 79-80; United States v. Koch Indus., Inc., 197 F.R.D. 463, 486 (N.D. Okla. 1998); Howell v. Maytag, 168 F.R.D. 502, 507-508 (M.D. Pa. 1996).

In seeking a sanction, it is the party alleging spoliation who carries the burden of proof. Tracy v. Cottrell, 524 S.E.2d 879, 890 (W. Va. 1999). Under Schmid, the factors to apply in determining whether a sanction is appropriate includes: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Schmid, 13 F. 3d at 79.

Importantly, the Third Circuit has held that a court should choose "'the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.'" Baliotis v. White Consolidated Indus., Inc., 870 F. Supp. 1285, 1289 (M.D. Pa. 1994)(quoting Schmid, 13 F.3d at 79).

> A sanction that has the "drastic" result of judgment being entered against the party who has lost or destroyed evidence must be regarded

> "as a "last resort," to be imposed only "if no alternative remedy by way of a lesser, but equally efficient sanction is available."

Baliotis, 870 F.Supp. at 1289 (citations omitted).

Relatedly, if there is destruction of evidence, the severity of the sanction should correspond with the wilfulness of the spoliator's destructive act and the prejudice suffered by the non-spoliating party. See Thompson v. United States Dept. of Housing and Urban Development, 219 F.R.D. 93, 101 (D. Md. 2003) (considering whether the destruction or loss of evidence was with a "culpable state of mind" and whether the evidence destroyed or altered was relevant to the claims or defenses); Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 74-75 (S.D.N.Y. 1991)("[t]he state of mind of a party that destroys evidence is a major factor in determining whether an adverse inference is the appropriate sanction). As noted in Schmid, 13 F.3d at 79, courts select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered.

2. The Court Should Not Address Plaintiff's Arguments Relating to Discovery Issues Arising at the Administrative Level or Relating to Dismissed Claims.

Most of Culler's arguments regarding ESI relate to discovery at the EEO administrative level and to claims that are not at issue in this case. First, reading Culler's motion and brief, it appears plaintiff wants the Court to sanction the VA for ESI supposedly not preserved and produced at the administrative level from 2004 through 2008. Clearly, any discovery disputes or issues at the administrative level

3

should have been raised with the administrative law judge (ALJ), not years later in federal court.

Second, Culler argues that ESI was not properly preserved as to a multitude of claims raised by Culler in this federal lawsuit even though nearly all of the claims have been dismissed by this Court as a matter of law. As seen in the VA's reply brief in support of summary judgment, at best, there are only four claims remaining in this case.[1] How can a plaintiff seek sanctions against a defendant for allegedly failing to preserve and produce ESI on claims not before the Court?

Indeed, when this case began, the parties discussed the issue of ESI and whether any ESI discovery should take place at all as to Culler's numerous claims until the Court determined which claims were properly before it in the first place. The Court indicated that it would resolve the issue of what claims remained first, although it directed defense counsel to produce the ESI retained by Toni Germain-Tudgay, Culler's supervisor at the Wilkes-Barre VAMC and whose actions were the focus of Culler's complaints of discrimination.[2]

---

[1] The remaining claims, if summary judgment is not granted, are: (1) the denial of certification assistance from the winter of 2005 through February 2, 2006; (2) the denial of two hours of overtime in January 2006; (3) the alleged attempted alteration of Culler's position description in March 2006; and (4) the rescission of training in March 2007.

[2] As has been reflected in documents produced before by defense counsel to the Court when Culler had indicated he might file a motion for sanctions regarding ESI, see Doc. 38, Attach. 1, and as reflected in a June 21, 2011 letter to Leonard Deutchman, Esquire, Culler's ESI consultant, see Deft. Exh. E, at the January 19, 2010 pretrial conference with the Court, defense counsel understood the Court to state that ESI maintained by Ms. Germain-Tudgay should be produced. The Court's

4

Thus, issues regarding discovery efforts and ESI taken/produced at the administrative level should not be the basis to consider sanctions against the VA in this federal lawsuit. Rather, any request for sanctions should focus on discovery sought at the federal level and relating to the existing claims. And as to that, but for plaintiff's **March 24, 2011** interrogatories asking about ESI preservation efforts (when discovery had already been extended numerous times and to end on April 15, 2011),[3] plaintiff has not served any discovery requests upon the VA.

3. Plaintiff Has Not Presented a Complete Picture of the Discovery That Was Produced and Additional Communications Relating to ESI

In seeking sanctions, plaintiff has failed to acknowledge that besides materials that were produced during the administrative proceedings,[4] the VA has produced

---

subsequent written order did not expressly reflect that limitation -- such that the VA did look for and produce other ESI retained by arguably relevant witnesses. Thus, Ms. Germain-Tudgay's ESI was produced on February 22, 2010, and other ESI was produced on August 19, 2010. See Doc. 38, Attach. 1 & 2; see also Deft. Exhs. A & B.

[3] The first discovery deadline was September 1, 2010. Doc. 19. The next discovery deadline was November 1, 2010. Doc. 28. The next deadline was March 15, 2011. Doc. 32. On February 28, 2010, plaintiff sought an additional 90-day extension of discovery. Doc. 33. On March 4, 2011, the Court granted only a 30-day extension of time for discovery, with discovery to end on April 15, 2011. Doc. 36. Then, on March 24, 2011, plaintiff served his first and only set of discovery, which were interrogatories regarding preservation efforts regarding ESI. See Doc. 54-1, at 1 (VA's response to plaintiff's interrogatories re ESI).

[4] The VA is not filing the extensive administrative records, which contained documents relevant to the various claims, the discovery requests and responses, and the deposition transcripts from the four EEO hearings, which amount to nearly two boxes worth of materials. If the Court desires to see them, however, the VA will produce them.

5

documents relating to ESI, which primarily are emails. On February 22, 2010, the VA did, per the Court's direction, produce over 230 pages of ESI (plus a privilege log as to discovery that was objected to) from Ms. Germain-Tudgay. See Deft. Exh. A. On August 19, 2010, the VA sent plaintiff an additional nearly 190 pages of ESI to plaintiff. See Deft. Exh. B. Then, after plaintiff was concerned that not all ESI had been produced as to the training claim, the materials were searched again and plaintiff was sent an additional fifty-plus pages (with there being some duplications of emails). See Deft. Exh. C.

Additionally, we think it is important for the Court to have the exchange of letters that occurred regarding ESI to explain why the VA produced ESI when they did and in the manner they did. See Deft. Exh. D (May 19, 2011 Deutchman letter) & Deft. Exh. E. (June 21, 2011Mershimer letter). In particular, in Deft. Exh. E, the VA clarified/amended some of its answers to ESI discovery, which the Court should be aware of. The VA also explained that it would not respond to some of plaintiff's additional questions since it appeared to constitute new discovery with the discovery deadline having already ended. See Deft. Exh. E.

4.   The VA Made Good Faith Efforts to Retain Discoverable Evidence

Much of plaintiff's motion for sanctions rests on the fact that the VA did not issue a litigation hold until July 2009, rather than each time plaintiff filed an administrative EEO claim. As the VA responded in discovery, it believed that the proper time to issue a formal litigation hold was after the federal complaint had been

served. Plaintiff cites primarily to district court opinions from New York to argue that litigation holds regarding ESI should have been issued earlier. See Doc. 54, at 2-4 (citing Orbet One Communs. v Numerex Corp., 271 F.R.D. 429 (S.D.N.Y. 2010); Zubulake v. UBS Warburg, 220 F.R.D. 221 (S.D.N.Y. 2003); and other cases). To our knowledge, this issue has not been definitively resolved by the Third Circuit -- although arguments can be made as to either position.[5] And while ESI has been an issue that has been developing over the past ten or so years, the Supreme Court only developing rules regarding ESI in December 2006. See Fed. R. Civ. P. 26. With the federal government, and particularly its multitude of different agencies, the development of ESI procedures and practices has taken time to learn.

Regardless of whether the electronically stored version of data was preserved completely at the administrative level through a litigation hold, VA counsel, Maggie Oberdorf, did direct persons who she believed had relevant information to preserve documents, including emails.[6] In her opinion, Ms. Germain-Tudgay, Culler's supervisor, was the primary holder of such information since Culler's claims always

---

[5] For example, if someone files a formal EEO complaint, this could indicate federal litigation may occur. On the other hand, the administrative process exists to resolve disputes before reaching federal court and we believe (although we do not know with certainty) that most employee discrimination claims never reach federal court.

[6] Due to time constraints on having this opposition brief before the Court before the August 12th pretrial conference, defense counsel has not been able to obtain an affidavit from Ms. Oberdorf regarding these matters. Ms. Oberdorf, however, as agency counsel, will be at the pretrial conference should the Court wish to discuss/explore this further.

revolved around her.  That did not mean that no one else was not asked to preserve documents because the administrative records contain documents provided from various persons, such as HR personnel or the VISN (Veterans Integrated Service Network), the VA network that managed the Wilkes-Barre VAMC.[7]  To this day, the VA is not aware of anyone who had relevant information/evidence that was not produced -- and certainly no information/evidence that was intentionally destroyed by anyone.

In fact, as to the four claims that remain in this case, no one has proffered anything of any substance to suggest that evidence was destroyed.  Documents were produced regarding each of the four claims.  There simply were not many documents, including email, in regard to the job description and overtime claims, with a bit existing regarding the certification claim involving Culler's name being placed on the VA national registry.  As to the training claim, many documents and emails were produced, with the email folders of multiple persons being searched.  Even when one person no longer had a particular email in their email folder, copies of their emails were in Ms. Germain-Tudgay or Bonnie Gurdock's email folders -- and they were all produced.  See Deft. Exh. B & C.  In short, there was no destruction of documents, including emails.

---

[7] For example, regarding the first EEO claim, the reclassification claim, there were many documents produced at the administrative level, which included emails, memos, and the like.  As to the OIG investigation claim, fourteen pages of electronically stored minute notes from three months worth of meetings were produced at the administrative level.  Regarding annual leave, multiple emails were set forth in the administrative record.  See Deft. Exh. F (EEO file Document C-4).

5.      <u>Culler Should Have Copies of His Emails and Any Other ESI</u>

It is correct that Culler's email folder was not preserved by the VA after he transferred from the Wilkes-Barre VAMC to the Maryland VAMC, with the computers of departing employees being routinely cleaned once they left. (At the time, there was no federal litigation and there was no policy in place regarding preserving ESI at the administrative level). But the only person that disadvantaged was the VA, not Culler.

Specifically, Culler has been represented by counsel since at least September 4, 2004, when he filed his very first EEO complaint. Since Culler's attorney is bringing this motion for sanctions, he should have had his client preserve all his emails and any other electronically stored information. While Culler could not go into the VA's computer system to alter the processing system to preserve them in a pure electronic format, he certainly could have, and should have, printed every email he ever sent or received from the VA relevant to any of his claims.[8] In fact, during the administrative proceedings, Culler did produce copies of emails he had received or sent. <u>See</u> Deft. Exh. G (excerpt of Sept. 10, 2006 letter from Jennings to EEO investigator re various documents, including emails). Thus, every email or document that was relevant to Culler's claims should have been preserved by him.

---

[8] No where in the motion for sanctions is there any argument that electronic data, such as metadata, was critical to possess, rather then the documents that had been electronically created and printed, such as emails.

9

6.  <u>Weighing of Factors</u>

Applying the above points with the law governing sanctions, there is no evidence of willful misconduct by the VA and no evidence that documents of any kind were destroyed relevant to the legal claims before this Court (or otherwise for that matter). Nor has plaintiff established any prejudice regarding allegedly missing ESI.[9] Nothing plaintiff has presented warrants the sanction of having judgment entered against the VA, or any other sanction for that matter -- particularly where plaintiff conducted no discovery of any substance during this entire federal litigation. Accordingly, the VA requests this court to deny the motion for sanctions.[10]

---

[9] In his brief, plaintiff suggests that during this "day of e-communications," there should have been a trail of emails regarding Culler's refusal to sign his performance evaluation. Doc. 54, at 16. While plaintiff's counsel may assume that, he is mistaken and there is no such trail of emails, which Ms. Germain-Tudgay can testify to. The federal government and its agencies are not flush with funds, employees, computer systems and software, or the like.

[10] Although the Government believes that no sanctions are warranted, to the extent the Court believes any facts are in dispute, those issues could be addressed during the non-jury trial.

**Conclusion**

For the above stated reasons, defendant requests this Court to deny plaintiff's motion for sanctions for failing to preserve and produce ESI.

Respectfully submitted,

PETER J.SMITH
United States Attorney

/s/ Kate L. Mershimer
KATE L. MERSHIMER

| Of Counsel: | Assistant U.S. Attorney |
|---|---|
| Margaret Oberdorf | Atty. I.D. No. PA 37430 |
| Staff Attorney | 228 Walnut Street, 2nd Fl. |
| Office of Regional Counsel | P.O. Box 11754 |
| VAMC | Harrisburg, PA 17108-1754 |
| 3900 Woodland Avenue | Phone: 717-221-4482 |
| Philadelphia, PA 19104 | Fax: 717-221-4493 |
| 215-823-5800 | Email: kate.l.mershimer@usdoj.gov |

Date: August 11, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH M. CULLER, : | |
|     Plaintiff : | |
| : | No. 3:09-CV-0305 |
| v. : | |
| : | (Magistrate Judge Mannion) |
| ERIC K. SHINSEKI, Secretary of the : | |
| United States Veterans Affairs, : | |
|     Defendant : | Electronically Filed |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on this 11th day of August, 2011, she served a copy of the attached

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION
FOR SANCTIONS RE THE PRESERVATION AND PRODUCTION OF ESI**

by electronic service pursuant to Local Rule 5.7 and Standing Order 05-6, ¶12.2 to the following individual(s):

Paul M. Jennings, Esquire  
Bank Towers, Suite 1202  
321 Spruce Street  
Scranton, PA 18503  

Leonard Deutchman, Esquire  
425 Commerce Drive  
Suite 125  
Fort Washington, PA 19118  

                                        /s/ Kate L. Mershimer  
                                        KATE L. MERSHIMER  
                                        Assistant U.S. Attorney