## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KEITH M. CULLER,                          :

        **Plaintiff**          :          **CIVIL ACTION NO. 3:09-0305**

**v.**                                    :

                                  **(MANNION, M.J.)**

**ERIC K. SHINSEKI, Secretary of**        :
**the United States Veterans Affairs,**

                                :

        **Defendant**

                                :

## <u>MEMORANDUM AND ORDER</u>[1]

Pending before the court is the Plaintiff's Motion for Sanctions for Failing to Preserve Electronic Stored Information and Provide Such Information in Discovery. (Doc. No. 50). Based upon a review of the motion and related materials, the motion will be denied.

By way of relevant procedural background [2], the plaintiff filed the instant action, (Doc. No. 1), on February 17, 2009, which he later amended on April 5, 2009, to include claims of age discrimination and retaliation (Count I), First Amendment violations (Count II), and a hostile work environment (Count III),

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

[2]Because the parties are familiar with the procedural history and factual context of this case, only those facts relevant to the court's analysis are set forth herein.

in relation to his employment as an Orthotist at the Wilkes-Barre, Pennsylvania, Veterans Affairs, ("VA"), Medical Center, (Doc. No. 3).

After consideration of the defendant's initial motion for judgment on the pleadings, (Doc. No. 30), and subsequent motion for summary judgment, (Doc. No. 64), the only remaining claim in this action is whether the plaintiff was discriminated against on the basis of reprisal for prior EEO activity with regard to training when, on March 7, 2007, the decision to send him to the National Training of VA Prosthetics/Orthotists Conference from March 19-24, 2007, was rescinded[3].

Since the original scheduling order in this matter, (Doc. No. 19), the court has granted a number of extensions of the discovery deadlines, (Doc. Nos. 19, 28, 32, 36), and held a number of telephone conferences, (Doc. Nos. 20, 29, 34, 37), as a result of the parties' ongoing discovery disputes mainly related to electronically stored information, ("ESI").

On July 12, 2011, the plaintiff filed the instant Motion for Sanctions for Failing to Preserve Electronic Stored Information and Provide Such Information in Discovery, in which he argues that the defendant failed to properly preserve, search and produce ESI responsive to his claims. As a result of these failures, the plaintiff argues that he has suffered real prejudice

---

[3]The court will limit its consideration of the instant motion for sanctions to this final remaining claim.

which requires the court to consider an adverse inference that such materials,
had they been provided, would have proven the assertions made in his
pleadings[4]. In addition, the plaintiff is seeking an order for the defendant to
pay all costs, including but not limited to attorney's and expert fees,
associated with his attempts at securing proper and complete discovery of
ESI. (Doc. No. 50). A brief in support of the plaintiff's motion was filed on July
27, 2011. (Doc. No. 54). The defendant filed a brief in opposition to the motion
on August 11, 2011. (Doc. No. 65).

In opposing the plaintiff's motion, the defendant initially argues that any
request for sanctions should focus only on discovery sought at the federal
level and relating to the remaining claim. The defendant argues that the only
discovery conducted by the plaintiff on the federal level in this matter was that
of interrogatories served upon the defendant on March 24, 2011, asking about
the defendant's ESI preservation efforts. Because the plaintiff has not served
discovery requests seeking ESI in the instant action, the defendant argues
that the court should not now consider his motion for sanctions.

---

[4]The plaintiff originally sought a jury trial in this matter and requested an
adverse inference jury instruction in relation to the instant motion. However,
he has brought his claims pursuant to the ADEA and Title VII against an
agency of the federal government for which Congress has not authorized jury
trials. See Lehman v. Nakshian, 453 U.S. 156, 160-68 (1981); Rogers v.
Hove, 20 F.Supp.2d 888, 889 (E.D.Pa. 1998). As such, a bench trial will be
held in this action and it will be for the court to consider any adverse
inferences.

With respect to this argument, the court notes that since the inception of this matter, the plaintiff has been raising the issue of whether there has been adequate preservation and production of ESI. The plaintiff first raised the issue in the parties' initial joint case management plan filed with the court in December of 2009[5], and the issue has been the subject of much debate among the parties since that time. The plaintiff has specifically sought ESI through the defendant's initial disclosure obligations under Fed.R.Civ.P. 26(a)(1), which requires that parties make certain initial disclosures "without awaiting a discovery request." Among these required initial disclosures is the requirement that each party disclose:

> a copy-or a description by category and location-of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Fed.R.Civ.P. 26(a)(1)(A)(ii).

Because the record makes clear that the plaintiff has been seeking both information relating to the preservation, as well as the production, of ESI since

---

[5]The initial joint case management plan was filed by the parties on December 20, 2009. (Doc. No. 15). By order dated January 4, 2010, the court directed that the parties re-file the joint case management plan utilizing the new joint case management plan form found on the Middle District's website. (Doc. No. 16). As a result, a second case management plan was filed on January 11, 2010, the substance of which mirrored that of the first. (Doc. No. 17).

early in this matter, the court finds it appropriate to consider the plaintiff's presently pending motion for sanctions. However, as noted above, the court agrees with the defendant that consideration of the plaintiff's motion should be limited in context to the remaining claim of whether the plaintiff was retaliated against when the approval for his March 2007 training was rescinded.

The defendant next argues that the plaintiff has not presented a complete picture of the discovery that was actually produced and additional communications between the parties relating to ESI. The defendant argues that the plaintiff has failed to acknowledge that, besides the materials that were produced during the administrative proceedings (which the defendant indicates consumes the better part of two boxes worth of materials), the defendant has produced documents relating to ESI in this matter, which are primarily emails. The defendant argues that on February 22, 2010, as per this court's direction, it produced over 230 pages of materials from Ms. Germain-Tudgay, the plaintiff's supervisor at the Wilkes-Barre VA Medical Center, plus a privilege log as to discovery for which there were objections. In addition, on August 19, 2010, the defendant argues that it sent an additional 190 pages of ESI to the plaintiff. Finally, after the plaintiff was concerned that not all ESI had been produced as to the training claim, which is relevant for present purposes, ESI materials were searched again and the plaintiff was sent an

additional fifty-plus pages which included some duplications of emails previously produced.

Concerning the above, the court, through refereeing the parties' ongoing discovery disputes, is well aware of the attempts made by the defendant to disclose existing ESI discovery to the plaintiff. However, for purposes of the instant motion, the focal claim raised by the plaintiff is that the defendant failed to properly preserve documents, the failure of which now prevents their production and has prejudiced the plaintiff. While present counsel has certainly made a concerted effort to produce those documents which have been preserved, the main issue here is whether there previously existed documents relevant to the plaintiff's remaining claim which were not preserved and cannot now be produced such that the plaintiff is prejudiced in bringing his claim.

This leads the court into the heart of the instant motion, i.e., whether the defendant failed to properly preserve and/or produce ESI causing prejudice to the plaintiff such that he is entitled to sanctions in the form of an adverse inference and costs and/or fees.

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Ogin v. Ahmed, 563 F.Supp.2d. 539, 542 (M.D.Pa. 2008) (citing Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd., 348

F.Supp.2d 332, 335 (D.N.J. 2004) (citations omitted)).

The burden of proof on a spoliation claim lies with the party asserting that spoliation of evidence has taken place. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107-08 (2d Cir. 2001). See also Williams v. Klem, 2010 WL 3812350, *2 (M.D.Pa., Sept. 22, 2010) (Carlson, M.J.) ("As a general rule, burden of proof on a spoliation claim lies with the party asserting that spoliation of evidence has taken place.") (citing Byrnie, supra); Progressive Cas. Ins. Co. v. Winnebago Industries, Inc., 2010 WL 6371906, *6 (W.D.Pa., Nov. 18, 2010) (same).

As a threshold matter, a party can only be sanctioned for spoliation of evidence if it had a duty to preserve it. Micron Technology, Inc. v. Rambus, Inc., — F.3d —, 2011 WL 1815975, * 6 (Fed. Cir.) (citing Zubulake v. USB Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y.)). The duty to preserve evidence begins when litigation is "pending or reasonably foreseeable." Id. (citing Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001); West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)). When litigation is "reasonably foreseeable" is "a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." Id. (citing Fujitsu Ltd. v. Fed. Express Corp, 247 F.3d 423, 436 (2d Cir. 2001)). The duty to preserve is not triggered by "the mere existence of a potential claim or the

distant possibility of litigation." Id. (citing e.g., Trask-Morton v. Motel 6 Operating L.P., 534 F.3d 672, 681-82 (7th Cir. 2008)). However, litigation also need not be "imminent, or probable without significant contingencies." Id. When litigation is reasonably foreseeable is a question of fact. Id.

Once the duty to preserve arises, a litigant is expected, at the least, to "suspend its routine document and retention/destruction policy and to put in place a litigation hold" to preserve relevant ESI or other information pertaining to the litigation. ACORN v. County of Nassau, 2009 WL 605859 (E.D.N.Y.) (citing Zubulake, 220 F.R.D. at 218; Doe v. Norwalk Cmty Coll., 2007 U.S. Dist. LEXIS 51084, at *14, 2007 WL 2066496) (a party needs to take affirmative acts to prevent its system from routinely destroying information)). Subsequent to the implementation of a litigation hold, counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce relevant documents. Zubulake v. USB Warburg LLC,  229 F.R.D. 422, 432 (S.D.N.Y. 2004).

In support of his claim that the defendant had a duty and failed to properly preserve ESI, the plaintiff factually sets forth that, in 2004, he worked at the Wilkes-Barre, Pennsylvania, Department of Veteran's Affairs facility when he was downgraded by means of an Agency Classification from Grade 11 to Grade 10. The plaintiff challenged the downgrade via an EEO formal complaint, in which he alleged that the downgrade was a discriminatory action

taken by his supervisor, Antoinette Germain-Tudgay, based upon his age.

From 2004 to the present, the plaintiff provides that he has been in constant litigation with the defendant through informal EEOC mediation, formal complaint to and administrative proceedings before the EEOC, and ultimately the filing of instant action. During this time, the plaintiff claims that the defendant retaliated for his actions, even subsequent to his transfer to Perry Pointe, Maryland, in April 2007, by providing negative employment references and through other actions.

In conjunction with his EEOC proceedings, in January 2008, the plaintiff indicates that he deposed several defense personnel, including Ms. Germain-Tudgay; Gene Molino, Associate Director; Donald Foote, Chief Financial Officer; Linda Stout, Nurse Executive; Christopher Nowak, VISN ("Veterans Integrated Service Network") 4 Prosthetics Chief; Dr. Diane Smith[6], Director of Education/Training; and Bonnie Gurdock, GS-9 Education Technician, placing the defendant on notice that these personnel would be witnesses in this matter. On January 28, 2008, the plaintiff indicates that he filed an emergency petition to compel responses to his discovery requests.

On May 8 and 9, 2008, an EEOC hearing was held, which the plaintiff

---

[6]Plaintiff inadvertently refers to this witness as Dr. "Linda" Smith; however, it is apparent from the record that the individual to whom he refers is Dr. Diane Smith, who is the Director of Education, and would have relevant information relating to the Wilkes-Barre VA Medical Center's training practices.

states concluded with him "substantially prevailing" and an order entering judgment against defendant dated October 31, 2008[7]. Subsequently, on February 13, 2009, a right to file a civil action was issued to plaintiff, who initially filed the instant action on February 17, 2009, and then amended the action on April 5, 2009.

The plaintiff argues that the defendant had a duty to preserve relevant ESI and that the defendant's duty to preserve was triggered in 2004 when he began filing his EEO complaints. The plaintiff argues, however, that the defendant did not issue a litigation hold memo to preserve relevant ESI until after the instant action was filed in 2009 and the most important years in the life of the matter had passed. Prior to this, the plaintiff argues that the defendant took no technical steps to preserve ESI, but simply gave a verbal directive to preserve ESI, without auditing to see whether the custodians were in compliance with that directive. Further, the plaintiff argues that the sole person directed to preserve discovery was his supervisor, Ms. Germain-Tudgay, who is the individual at the center of his complaints.

The defendant's position, on the other hand, is that the duty to preserve relevant ESI was not triggered until the defendant was served with the federal

---

[7]Upon review of the record, following a hearing on the plaintiff's consolidated second and third EEO complaints, the A.L.J. found against the plaintiff as to all of the claims pending in those complaints, except the March 2007 training claim that is currently before this court, for which she ordered the plaintiff reimbursed.

complaint, reviewed the allegations set forth therein, and had a reasonable period of time to allow for notification to the subject agency.

In considering this threshold issue, the court finds that the defendant did have a duty to preserve relevant ESI and that the defendant's duty arose in 2004 when the plaintiff filed his initial EEOC complaint claiming that his position downgrade was the result of age discrimination. See Adorno v. Port Authority of New York and New Jersey, 258 F.R.D. 217, 228 (S.D.N.Y. 2009) (filing of EEOC charge gave defendant reason to anticipate litigation and 'put in place a litigation hold' extending to email as well as paper documents relevant to the charge) (citing Zubulake, 220 F.R.D. at 216-18) (employer's duty to preserve back-up tapes of emails of certain supervisors and coworkers involved in alleged gender discrimination arose, at the latest, when employee filed her EEOC charge)). See also Northington v. H & M Intern., 2011 WL 663055, *6 (N.D.Ill. Jan. 12, 2011) (citing Jones v. Bremen High School Dist. 228, 2010 WL 2106640, *6 (N.D.Ill. May 25, 2010) (employer's duty to preserve relevant documents arose no later than when employer received notice that plaintiff had filed a discrimination charge against it with the EEOC)). At the time of the plaintiff's initial EEOC complaint, the defendant was undoubtedly aware that the plaintiff was protected by federal discrimination laws which require a party to complete the administrative process prior to filing federal litigation. The filing of a formal EEOC complaint

claiming age discrimination in employment, a form of litigation in itself, is certainly an indication that more formal federal litigation may follow. Further, the record demonstrates that, "early[8]" in the administrative process, agency counsel exhibited an awareness of the potential for litigation by issuing a "verbal" directive to the plaintiff's supervisor to retain any emails and documents on her computer or in her files that were relevant to the plaintiff's claims. At that time, counsel was apparently on notice of the potential for litigation and was under an obligation to issue a litigation hold in order to preserve ESI or other information relevant to the plaintiff's claim.

Once a litigation hold is put into effect, the hold continues through the final resolution of the relevant claims[9]. Here, the plaintiff's initial EEOC complaint, which should have triggered a litigation hold, was filed in 2004 and not denied until April 11, 2006. While that complaint was pending, in February 2006, the plaintiff filed his second EEOC complaint which contained numerous additional claims of age discrimination, as well as retaliation claims. While this second complaint was pending, the plaintiff filed a third EEOC

---

[8]Although counsel is unable to provide the exact date of the verbal directive, counsel has provided that the directive took place early in the plaintiff's administrative proceedings.

[9]Shira A. Scheindlin et al., Electronic Discovery and Digital Evidence: Cases and Materials 152 (West 2009) ("A legal hold may be lifted once the litigation is finally resolved, assuming that preserved data is not relevant to any other existing or anticipated litigation.")

complaint in April 2007, which contained the retaliation claim still the subject of the instant action[10]. In each instance where the plaintiff filed subsequent complaints raising additional claims prior to the resolution of his previous claims, the litigation hold should have been modified to include that ESI or documentation relevant to the additional claims.

As mentioned above, the defendant concedes that a litigation hold was not put in place until after the instant federal action was filed in 2009. The plaintiff argues that the defendant's failure to issue a litigation hold in order to preserve the ESI from the plaintiff's own government computer[11] or from the computers of the above-named individuals from whom he sought discovery at the administrative level, and all of whom had or were likely to have ESI responsive to discovery requests[12], calls for sanctions. As a result of the defendant's failure to properly preserve ESI, the plaintiff argues that the three

---

[10]In 2008, the plaintiff filed a fourth EEOC complaint which is of no relevance for purposes of the instant action.

[11]The defendant concedes that the plaintiff's email folder was not preserved by the VA after he transferred from the Wilkes-Barre VA Medical Center, with the computers of departing employees being routinely cleaned once they left. The plaintiff argues that the failure to preserve his own ESI in light of the claims he had pending is sanctionable *per se*.

[12]In his initial disclosures, with the exception of Mr. Molino, the defendant concedes that the testimony of each of these individuals would have some relevance to the remaining claim regarding the March 2007 training session. (Doc. No. 54).

productions of ESI made by the defendant are deficient such that he has suffered real prejudice. Specifically, the plaintiff argues that the defendant produced ESI that was almost entirely made up of e-mails responding or pertaining to the litigation or administrative proceedings that preceded it. With little exception, the plaintiff argues that the defendant produced no e-mails that discussed the issues underlying the complaint. Having destroyed the plaintiff's own ESI, the plaintiff argues that the defendant has rendered it impossible for the plaintiff to present his case. While, in the court's opinion, spoliation has been established to the extent that the defendant had a duty to preserve relevant ESI by instituting a litigation hold and did not do so, whether the plaintiff has established that sanctions are appropriate is another issue.

Where a spoliation claim is established, sanctions may be appropriate, including: 1) dismissal of a claim or granting judgment in favor of a prejudiced party; 2) suppression of evidence; 3) an adverse inference, referred to as the spoliation inference; 4) fines; and 5) attorneys' fees and costs. Mosaid, 348 F.Supp.2d at 335.

When fashioning an appropriate sanction, courts must consider the facts and circumstances of each case, but ultimately the use and manner of sanctions are within "the inherent power of district courts . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

14

Baliotis v. McNeil, 870 F.Supp. 1285, 1289 (M.D.Pa. 1994) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (internal quotation marks omitted)). The Third Circuit has instructed that when imposing sanctions, the court should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudiced suffered by the victim." Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994).

The spoliation inference, as sought in this case, permits the factfinder to assume that "the destroyed evidence would have been unfavorable to the position of the offending party." Schmid, 13 F.3d at 78. See Howell v. Maytag, 168 F.R.D. 502, 505 (M.D.Pa. 1996). A spoliation sanction in the form of an adverse inference is essentially an evidentiary ruling which rests in the sound discretion of the court. Ward v. Lamanna, 334 Fed.Appx. 487, 492 (3d. Cir. 2009). In Schmid, the Third Circuit noted that use of an adverse inference is less severe a sanction for the spoliation of evidence than dismissal or suppression of evidence. Schmid, 13 F.3d at 79; see also Mosaid, 348 F.Supp.2d at 335–36. However, even being a less severe sanction, the adverse inference often creates "too difficult a burden for the spoliator to overcome" and therefore is "an extreme sanction and should not be given lightly." Zubulake, 220 F.R.D. at 219-20. See In re Methyl Tertiary Butyl Ether (MTBE) Products Liability, 643 F.Supp.2d 482, 500 n.130 (S.D.N.Y. 2009) ("The *in terrorem* effect of an adverse inference is obvious . . . Accordingly,

the adverse inference instruction is an extreme sanction and should not be given lightly.") (quoting Zubulake, 220 F.R.D. at 219-20)). See also In re Semrow, 2011 WL 1304448, *3  (D.Conn.) (same) (quoting Zubulake, 220 F.R.D. at 219-20)).

Courts contemplate the following "key considerations" before determining an appropriate sanction: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. Kvitka v. Puffin Co., L.L.C., 2009 WL 385582, *4 (M.D.Pa., Feb. 13, 2009) (citing Schmid, 13 F.3d at 79)[13].

With respect to the instant action, the plaintiff has established that the defendant failed to put into place certain procedural mechanisms in order to

---

[13]In Schmid, the court considered these "key considerations" in determining whether dismissal or complete suppression of evidence were appropriate sanctions for spoliation. Id. at 79. However, within the Third Circuit, courts have utilized these considerations as an initial step to determining what, if any, sanctions are appropriate. See e.g., Ogin v. Ahmed, 563 F.Supp.2d 539, 545 (M.D.Pa. 2008) (Conaboy, J.); E.N. v. Susquehanna Tp. School Dist., 2011 WL 2790266, *3 (M.D.Pa., Jul. 14, 2011) (Carlson, M.J.); Bull v. United Parcel Service, Inc., 2010 WL 4553551, *2 (D.N.J., Oct. 29, 2010); Paluch v. Dawson, 2009 WL 3287395, *2 (M.D.Pa., Oct. 13, 2009) (Rambo, J.); Dowling v. U.S. Government, 2008 WL 4534174, *1 (D.V.I. Oct. 06, 2008); Tripp v. Ford Motor Co., 1996 WL 377122, *2 (E.D.Pa., Jul. 03, 1996).

properly preserve ESI. However, despite this, the only evidence which the plaintiff has established was actually destroyed or not preserved was the contents of his own mailbox, which the defendant concedes was not preserved by the VA after he transferred from the Wilkes-Barre VA Medical Center to the Maryland VA Medical Center in March of 2007, with the computers of departing employees being routinely cleaned once they left.

In considering the above "key considerations," "[w]hen determining the degree of fault and personal responsibility attributable to the party that destroyed the evidence, the court must consider whether that party intended to impair the ability of the other side to effectively litigate its case." AMG Nat'l Trust Bank v. Ries, 2011 WL 2099629, *5 (E.D.Pa., Jul. 22, 2011) (quoting Paramount Pictures Corp. v. Davis, 234 F.R.D. 102, 111 (E.D.Pa. 2005) (internal quotation marks omitted)). See also Hechinger Investment Co. of Delaware, Inc. v. Universal Forest Products, Inc., 489 F.3d 568, 579 (3d Cir. 2007) (affirming Bankruptcy Court's denial of a motion for an evidentiary inference partially on the basis that the moving party failed to show that documents were intentionally destroyed under the first of the Schmid factors). Here, the plaintiff has presented no evidence that the deletion of his mailbox in 2007 upon his transfer to the Maryland facility was an intentional act on the part of the defendant to impair his ability to litigate his claims rather than part of its routine practice of cleaning the computers of departed employees.

17

Therefore, this factor does not weigh in favor of sanctions.

Moreover, the record does not support the fact that the plaintiff was actually prejudiced by the defendant's failure to preserve in any way. "When considering the degree of prejudice suffered by the party that did not destroy the evidence, the court should take into account whether that party had a meaningful opportunity to examine the evidence in question before it was destroyed." AMG Nat'l Trust Bank, supra (citing Paramount, 234 F.R.D. 112 (internal quotation marks omitted)). Here, the evidence which the defendant failed to preserve was the plaintiff's own emails. Certainly, during the course of his employment at the Wilkes-Barre VA Medical Center and prior to his transfer, the plaintiff had the opportunity to meaningfully review those emails. In fact, the record establishes that during his administrative proceedings the plaintiff produced copies of emails which he had received and sent relating to his claims. (Doc. No. 65, Ex. G).

In addition, in order to establish prejudice, a party seeking spoliation sanctions must "come forth with plausible, concrete suggestions as to what the [missing] evidence might have been." Medeva Pharma Suisse A.G. v. Roxane Laboratories, Inc., 2011 WL 310697 (D.N.J., Jan. 28, 2011) (quoting Schmid, 13 F.3d at 80)). Relatedly, the moving party must establish that the missing evidence would be relevant to his claims. See Chirdo v. Minerals Technologies, Inc., 2009 WL 2195135, *1 (E.D.Pa., Jul. 23, 2009). Relevant

evidence is evidence that tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Id. (quoting Fed.R.Evid. 401; see also, Fed.R.Evid. 402; Waters v. Genesis Health Ventures, Inc., 400 F.Supp.2d 808, 811 (E.D.Pa. 2005)). In this case, the plaintiff has not presented the court with any "plausible, concrete suggestions" as to what the missing emails would have contained. Further, he has failed in any way to establish whether they would have made his claim of retaliation more probable than not. See Hechinger, supra (affirming Bankruptcy Court's denial of a motion for an evidentiary inference partially on the basis that moving party failed to establish prejudice in that it failed to identify any destroyed evidence that would have aided it in its claims).

To further undermine the plaintiff's claim of prejudice, although the contents of the plaintiff's email folder was admittedly not preserved, the plaintiff himself can certainly provide testimony and call witnesses regarding information he believes to have been contained in the emails. In fact, during the administrative proceedings, the plaintiff deposed numerous witnesses that would have had relevant information with respect to his training claim.

In light of the court's findings with respect to the first two of the Schmid factors, as to the third (i.e., the appropriateness of sanctions), the court finds that sanctions, either in the way of an adverse inference or the imposition of

costs and/or fees, are not warranted in this case. Accordingly, the plaintiff's motion for sanctions will be denied on this basis.

In addition to his argument that the defendant failed to properly preserve ESI, the plaintiff argues that the defendant failed to conduct a proper search of the ESI which was preserved. For purposes of the claim which remains, the only relevant argument regarding the search is that the defendant failed to solicit his input or agreement on the search, which resulted in a search which was too restrictive and which was of an incomplete dataset. Challenges to particular search methodologies of ESI "requires knowledge beyond the ken of a lay person (and a lay lawyer) and requires expert testimony that meets the requirements of Rule 702 of the Federal Rules of Evidence." Equity Analytics, LLC v. Lundin, 248 F.R.D. 331, 333 (D.D.C., 2008) (citing United States v. O'Keefe, 2008 WL 449729, at *8 (D.D.C., Feb. 18, 2008)). Generally, neither lawyers nor judges are qualified to opine that certain search terms or files are more or less likely to produce information than those keywords or data actually used or reviewed[14]. Since the plaintiff has failed to present any expert testimony by affidavit or otherwise which would allow the court to conclude that the defendant's search was inadequate, the plaintiff's

---

[14]Judge John M. Facciola described this as going "where angels fear to tread." United States v. O'Keefe, 537 F.Supp.2d at 24.

motion will be denied on this basis.

Finally, the plaintiff argues for various reasons that the three productions of ESI made by the defendant during the course of discovery were insufficient. In relation to this argument, the plaintiff makes no mention of the only remaining claim in this action. Therefore, the court will deny the plaintiff's motion on this basis as well.

On the basis of the foregoing, **IT IS HEREBY ORDERED THAT:**

the plaintiff's motion for sanctions, **(Doc. No. 50)** is **DENIED**.


s/ _Malachy E. Mannion_
**MALACHY E. MANNION**
**United States Magistrate Judge**


**Date:** August 26, 2011

O:\shared\MEMORANDA\2009 MEMORANDA\09-0305-02.wpd

21